UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JACOB MILLER,**                                                    Case No. 3:12-cv-00880-PK

                    Plaintiff,

        v.                                                                      **OPINION AND ORDER**

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                    Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Jacob Miller seeks judicial review of a final decision of the Commissioner of

Social Security denying his application for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the

"Act"). This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3), and the parties

have consented to adjudication by a Magistrate Judge. The court considered all of the parties'

Page 1 – OPINION AND ORDER

briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen,* 482 U.S. at 140. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See id.; see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen,* 482 U.S. at 140–41; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §

404.1521(b); *see also Bowen,* 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen,* 482 U.S. at 141. If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1 (the "Listing"), the claimant will conclusively be found disabled. *See id.; see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical, and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

416.920(a)(4)(iv), 416.920(f).  In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, some individuals limited by physical impairments to sedentary or light work must be found disabled, depending on their age and vocational education level.  *See* 20 C.F.R. § 404, Subpt. P, App. 2.  The so-called "grids" contained in Tables 1 and 2 of Appendix 2 to Subpart P of Section 404 set forth the criteria for determining whether such a nondiscretionary finding must be made.  In the event the grids do not mandate a finding of "disabled," the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy.  *See Bowen,* 482 U.S. at 142.  If the Commissioner meets his burden of demonstrating that there are a significant number of jobs in the national economy within the limitations of the claimant's proven RFC, the claimant is conclusively found not to be disabled.  *See id.*  A claimant will be found entitled to benefits if the Commissioner fails to meet his burden at the fifth step.  *See id.; see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966(d).

### LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a

conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (citing *Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation," *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d at 1035, 1038 (9th Cir. 2009) (citation omitted).

## BACKGROUND

Miller was born on June 7, 1982. Tr. 156.[1] As a child, Miller was raised by alcoholic parents and experienced physical, sexual, and emotional abuse, along with neglect. Tr. 639. Miller completed school through the tenth grade and does not have a GED. Tr. 637. At age 18, Miller got together with his wife Valerie Adamich. Tr. 637. The couple is not officially married by the State, however they had a ceremony and present themselves to others as husband and wife.[2] Tr. 161, 637. The couple has two children. Tr. 157, 636–37. Miller has a long history of alcohol and methamphetamine dependence, dating back to an early age. Tr. 637–38.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.
[2] At times in the record, Miller states he has never been married and Ms. Adamich is referred to as his girlfriend.

From January 23, 2006 to March 17, 2006, Miller received two mental health therapy assessments from Dr. Bruce S. Neben at the Yamhill County Adult Mental Health Program. Tr. 332–44. Dr. Neben diagnosed Miller with anxiety disorder, mostly with regard to trouble sleeping. Tr. 338, 340. Miller also discussed with Dr. Neben an incident that occurred at his home on New Years Eve that year when he drank too much and became violent. Tr. 334. When he tried to leave his home, Miller's wife and mother attempted to restrain him. Tr. 334. The wife and mother eventually called the police, who came to the home and cited Miller with domestic violence. Tr. 334. The police transported Miller to the emergency room at the Willamette Valley Medical Center for medical clearance before taking him to jail. Tr. 327–29. The emergency room record indicates police had to use a taser on Miller to restrain him on the scene. Tr. 328. This New Years Eve incident resulted in a restraining order against Miller, and he and his wife temporarily separating. Tr. 334.

On the night of June 7, 2006, Miller's birthday, the police again came to Miller's home, allegedly in response to a noise complaint.[3] Tr. 55. However, according to Miller the police arrived at his home by mistake. *Id.* The record is very unclear as to the precise events that occurred. At some point during the incident, five police officers tackled Miller outside his home, injuring his right knee. *Id.* The police arrested Miller and it is not clear what he was charged with, however he testified he was acquitted of all charges and as a result of this incident filed a civil lawsuit against the police in federal court. Tr. 55–57.

During the early morning hours of June 8, 2006, the police transported Miller to the emergency room at the Providence Newberg Hospital for examination. Tr. 346–60. The record indicates that Miller was "extremely combative" at the emergency room and "threw himself off

---

[3] The ALJ incorrectly stated in his decision this event occurred on July 7, 2006. Tr. 23. Miller's testimony and emergency room records establish that the event took place on June 7, 2006. *See* Tr. 55, 346–60.

[the] x-ray table" screaming profanities. Tr. 348, 357. Examination later that day of Miller's right knee revealed swelling anteriorly and posteriorly, tenderness to palpation of the anterior, posterior, lateral and medial knee with a limited active range of motion causing pain and a limited passive range of motion causing pain. Tr. 349.

On June 14, 2006, an MRI of Miller's right knee revealed an abnormal appearing anterior cruciate ligament ("ACL") with extensive edematous change and without visualized intact fibers, consistent with an ACL tear, a small peripheral tear of the medial meniscus and small posterior segment lateral meniscus tear extending to the articular surface superiorly, large joint effusion, and extensive bone bruising. Tr. 480. On June 28, 2006, an examination by Dr. Thomas J. Croy, an orthopedic physician surgeon, revealed Miller sustained a complete ACL tear and possible associated meniscal pathology. Tr. 476–79.

On September 12, 2006, Miller underwent surgery with Dr. Croy for a right ACL reconstruction with hamstring tendons, rigid fix, and intrafixation. Tr. 362–69. On November 3, 2006, Miller underwent manipulation and Marcaine injection under anesthesia of the right knee for treatment of arthofibrosis. Tr. 374–84. After the surgery, Miller continued to have right knee pain and stiffness, and on December 15, 2006, he again underwent manipulation and epidural under anesthesia of the right knee. Tr. 455–67.

From August 4, 2006 to January 3, 2007, Miller participated in physical therapy at Providence Newberg Rehabilitation Services. Tr. 385–454. Miller's goals when starting were to increase the active range of motion in his right knee to facilitate a normal gait. Tr. 387–92. On his last day of therapy, he was recorded as walking with a cane in his right hand, an antalgic gait with excessive side-to-side sway, and a seated flexion twelve degrees below full extension. Tr. 452–54.

On September 12, 2007, Miller protectively filed his applications for DIB and SSI, alleging disability as of June 8, 2006, due to right knee injury, ACL reconstruction, arthrofibrosis, anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), irritable bowel syndrome ("IBS"), and bi-polar disorder. Tr. 156–64. Miller's applications were denied initially and upon reconsideration. Tr. 101–10, 114–20. Miller timely requested a hearing before an ALJ. Tr. 121–23. On October 13, 2010, Miller appeared at an ALJ hearing before the Honorable Edward H. Hein. Tr. 36–96. On February 8, 2011, ALJ Hein issued a decision finding Miller not disabled within the meaning of the Act. Tr. 15–35. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6, *see also, e.g. Sims v. Apfel*, 530 U.S. 103, 107 (2000). This appeal followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found Miller had not engaged in substantial gainful activity since the alleged onset date of June 8, 2006. Tr. 20. The ALJ noted Miller worked after the alleged onset date but the work did not rise to the level of substantial gainful activity. *Id.* Earnings records indicated Miller earned $7,828.09 in 2006 and $1,387.07 in 2007. *Id.* (citing Tr. 169.) However the ALJ found these earnings did not meet or exceed the minimum thresholds for those years. *Id.*

At the second step, the ALJ found Miller had the following severe impairments: status post right ACL repair; ADHD; depression; bipolar disorder; anxiety; personality disorder; and polysubstance use and abuse. Tr. 20–21. The ALJ also found Miller suffers from asthma and IBS, which are both controlled with prescription medication. Tr. 21.

At the third step, the ALJ found none of Miller's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1. Tr. 21–22. The ALJ therefore

conducted an assessment of Miller's RFC. Specifically, the ALJ found during the relevant adjudication period, Miller could perform light work with the following limitations: he is able to lift and carry twenty pounds occasionally and ten pounds frequently; he is able to stand and walk for six hours of an eight-hour workday; he is able to sit for six hours in an eight-hour workday; he is able to occasionally climb ladders, ropes and scaffolds, kneel, crouch, and crawl; he is able to frequently climb ramps and stairs, balance and stoop; he should avoid all exposure to hazards such as unprotected heights and moving machinery; he is able to understand, remember and carry out simple instructions; and he should have only occasional indirect contact with the general public. Tr. 22. In reaching these conclusions, the ALJ considered all of the objective medical evidence in the record, opinion evidence, and Miller's own statements regarding his symptoms and limitations. Tr. 22–27.

At the fourth step, the ALJ found Miller had no past relevant work. Tr. 27. Finally, at step five, the ALJ found given Miller's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. Tr. 27–28. Based on these findings, the ALJ determined Miller was not disabled within the meaning of the Act. Tr. 28–29.

## ANALYSIS

Miller argues the ALJ erred because he (1) did not find his IBS a severe impairment at step two; (2) improperly rejected his credibility; (3) failed to properly address the Global Assessment of Functioning (GAF) scores assigned to him in the treatment records of Drs. Sally Godard and William Nunley; (4) improperly rejected the medical opinion of Dr. Godard; and (5) failed to address the lay opinion of his wife Valerie Adamich. Pl.'s Opening Br. 3–8.

## I.    Irritable Bowel Syndrome

Miller contends the ALJ erred at step two by failing to designate IBS among his severe impairments. Pl.'s Opening Br. at 5–6. As noted above, at step two the ALJ found Miller has been diagnosed with IBS that is stabilized with prescription medication. Tr. 21 (citing Tr. 589–90, 595.)

At the second step in the sequential analysis, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140–41; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. An ALJ can find an impairment "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chafer*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R. § 404.1521(a).

Before an ALJ can conclude that a claimant's symptoms affect the claimant's ability to work, "medical signs or laboratory findings . . . must show the existence of a medical impairment." 20 C.F.R. § 404.1529(b); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96–4p, 1996 WL 374187, at *1; *see also* 20 C.F.R. § 404.1508. An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error, however, if the ALJ resolves step two in the claimant's favor and properly considers limitations

imposed by the impairment at other steps of the sequential process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In support of his argument that his IBS is a severe impairment, Miller relies on the Third Party Function Report of his wife Valerie Adamich[4] who stated "[h]is stomach problems cause him to always be near a bath room at all times or else he will mess himself." Pl.'s Opening Br. at 6 (citing Tr. 185). Miller also cites medical records documenting his subjective complaints of IBS including a statement by Dr. Jeremy Swindle, his primary care physician, which states "[f]or IBS, he takes an anti-spasmodic and ranitidine, which together are mildly effective." *Id.* (citing Tr. 531.)

While the record shows Miller has been diagnosed with IBS, it does not establish his IBS is a severe impairment. The same office visit record from Dr. Swindle that Miller cites states "IBS. some improvement with levsin and zantac; will continue." Tr. 532. Dr. Linda Jensen, a state medical consultant, noted Miller alleged a history of IBS but "[it] also appears to be fairly stable with [prescription]. No signs of malnutrition. Exam of the abdomen is essentially benign. It is tender to the left lower and hypogastric [region]." Tr. 741. Finally, Dr. Kurt Brewster, a consultative physician, noted Miller's complaints of IBS but found: "[h]is IBS is less certain. He reports chronic diarrhea with well-preserved weight and no documentation within medical record." Tr. 590, 594–95. The ALJ rejected Dr. Brewster's opinion as to Miller's limitations for walking, standing, lifting, and carrying, but stated "the remainder of Dr. Brewster's opinion is somewhat reasonable given the medical evidence of record (though that evidence demonstrates that the claimant's postural limitations differ somewhat than expressed) . . ." Tr. 26.

---

[4] As discussed below, the ALJ erred in failing to discuss the lay testimony of Ms. Adamich, however such error was harmless.

In sum, the record shows Miller has been diagnosed with IBS and treated for it with prescription medication, stabilizing his symptoms. Impairments that can be controlled effectively with medication are not disabling for Social Security purposes. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). The record also does not contain objective medical findings to support a finding that Miller's IBS imposes any limitations on his ability to do basic work activities. As a result, there was no error by the ALJ in failing to find Miller's IBS a severe impairment or in failing to consider any limitations imposed by it beyond step two. *See e.g. Golding v. Comm'r of Soc. Sec.*, 2010 WL 3386588, *6 (D. Or. Aug. 24, 2010) (record contained no objective medical findings to support IBS as a severe impairment); *see also Leuck v. Astrue*, 2013 WL 1900605, *3–4 (D. Or. May 3, 2013).

## II.    Credibility

Miller argues the ALJ did not offer clear and convincing reasons for rejecting his testimony. Pl.'s Opening Br. at 6–8. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–16 (9th Cir. 1991) (en banc)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found Miller's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limitations of those symptoms not credible. Tr. 23–24.

### A.    Activities of Daily Living

The ALJ found Miller's activities of daily living inconsistent with his reports of disabling impairments. Tr. 24. Inconsistencies between a claimant's reported symptoms and activities of daily living are a valid basis for rejecting a claimant's complaints. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.") This type of evidence is proper, however, only where it sheds light on the claimant's actual abilities and demonstrates that she has skills or abilities which could be transferred to a work setting. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("As this Court previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."); *Morgan v. Commissioner of Soc. Sec*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found the function reports Miller filled out as part of his application for benefits demonstrate he is able to perform daily activities including shopping, handling money and paying bills, using public transportation, engaging in hobbies, and socializing. Tr. 24 (citing Tr. 193–96, 230–33.) Further, the ALJ found Miller is able to groom himself and do yard work, albeit at a slower pace than previously. *Id.* The ALJ also noted the function reports filled out by his wife Valerie Adamich confirm he engages in these daily activities. *Id.* (citing Tr. 185–88, 222–25.) Although Miller testified he is unable to work due to pain in his right knee and his mental issues, these daily activities demonstrate his physical and mental limitations may not be as bad as he claims. *Fair*, 885 F.2d at 603.

### B.    Work Record

The ALJ also found Miller's work record suggested a problem in maintaining employment independent of any impairment. Tr. 24–25. In weighing a claimant's credibility, the ALJ may consider a claimant's work history. *Thomas*, 278 F.3d at 958–59. The ALJ noted Miller has a history of shifting jobs, including several described as a cook. Tr. 24 (citing Tr. 237.) The ALJ also noted that at step one he found Miller had worked after the alleged onset date, albeit below the level of substantial gainful activity, which demonstrates his retention of some work-related capacity. Tr. 25. Miller's work activity thus contradicts his subjective symptom testimony that he is unable to work due to the pain in his right knee and his mental issues. *Thomas*, 278 F.3d at 959.

### C.    Failure to Comply with Medical Treatment

The ALJ also found Miller has a history of missing physical therapy and mental health therapy sessions, as well as discontinuing his medications without a doctor's approval. Tr. 25. Failure to seek treatment or follow a prescribed course of treatment is a clear and convincing

reason to reject a claimant's subjective symptom testimony. *Smolen*, 30 F.3d at 1284. The ALJ noted Miller failed to attend at least nine physical therapy sessions for his knee injury and two mental health therapy sessions with Dr. Neben. Tr. at 23–24. Further, the records from Dr. Sally Godard and counselor Tabatha Bird-Weaver at Yamhill County Adult Mental Health indicate Miller cancelled or failed to attend at least nine mental health sessions. Tr. 648, 651, 663, 675, 684–85, 691, 777, 785. Finally, the ALJ noted that while Miller was prescribed a cane for walking, he forces himself to walk without a cane. Tr. 23. Miller's failure to attend physical therapy and mental health therapy sessions, as well as discontinuing use of a cane, constitutes an additional reason to discount his credibility. *Smolen*, 30 F.3d at 1284.

### D.    Police Confrontations

Finally, the ALJ questioned Miller's general credibility and candor during the hearing because he failed to give adequate and straightforward explanations of his actions that led to multiple confrontations with police at his home. Tr. 27. As a result, the ALJ found Miller may not be entirely forthright in his statements about the severity of his symptoms and impairments. *Id.* In determining a claimant's credibility, an "ALJ may consider ordinary techniques of credibility evaluation." *Smolen*, 30 F.3d at 1284. Here, the record shows Miller was involved in two confrontations with police at his home in 2006, resulting in emergency room visits and physical therapy sessions for his physical injuries, as well as psychiatric care for his mental health issues. Tr. 54–57, 334, 327–29, 346–60. Miller also testified at the hearing that he was arrested at his home and jailed again in 2008 and 2010. Tr. 82–85. However, the record is very unclear as to the precise events that lead to these police confrontations. Thus, Miller's failure to explain those multiple police confrontations seriously undermines his credibility.

In sum, the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record for rejecting Miller's testimony. This court will not disturb the ALJ's finding where, as here, it is supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec*, 169 F.3d 595, 600 (9th Cir. 1999)).

### III.   Treating Psychiatrists

Miller argues the ALJ erred in his evaluation of the medical records of treating psychiatrists Drs. Sally Godard and William Nunley of Yamhill County Adult Mental Health.[5] Pl.'s Opening Br. at 3–5. First, Miller argues the ALJ failed to properly address the GAF scores in the office treatment records of Dr. Godard and Dr. Nunley. *Id.* Second, Miller argues the ALJ improperly rejected Dr. Godard's opinion dated September 9, 2008. *Id.*

In weighing a claimant's medical evidence, the Commissioner generally affords enhanced weight to the opinions of the claimant's treating physicians. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician's medical opinion is well supported by diagnostic techniques and is not inconsistent with other substantial evidence in the medical record, the treating physician's opinion is accorded controlling weight. *See id.* An uncontradicted treating physician's opinion may only be rejected for "clear and convincing" reasons supported by evidence in the record, and a contradicted treating physician's opinion may only be rejected for "specific and legitimate" reasons supported by evidence in the record. *See Reddick v. Chafer*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester v. Chafer*, 81 F.3d 821, 830 (9th Cir. 1995)).

Notwithstanding the foregoing, no such deference is afforded a treating physician's opinion as to the ultimate issue of a claimant's disability or as to any other issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *see also* SSR No. 96–5p, 1996 WL 374183, *2.

---

[5] The court notes the record contains a large number of duplicative treatment records from Yamhill County Adult Mental Health. *Compare* Tr. 628–89 *with* Tr. 690–734; *see also* Tr. 767–828. As such, the court will only cite to a document the first time it appears in the record.

Page 17 – OPINION AND ORDER

However, medical opinions from a treating physician or any other source may not be simply ignored, even when they bear upon issues reserved for the Commissioner, but rather must be evaluated to determine the extent to which they are supported by evidence in the record. *See* SSR No. 96–5p, 1996 WL 374183, *3. Nevertheless, although the Commissioner is required to evaluate every medical opinion, the Commissioner is only required to discuss "significant probative evidence" in his detailed findings. *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981).

### A.    GAF Scores

Miller argues Dr. Godard and Dr. Nunley imposed GAF scores which "equate to disability" and the ALJ did not properly address them. Pl.'s Opening Br. 3–5. Dr. Godard assigned Miller a GAF score of 40 in her initial assessment and throughout her treatment.[6] Tr. 640, 642, 644, 646, 649, 653, 655, 657, 659, 661, 664, 666, 669, 671, 673. The ALJ noted Dr. Godard's GAF score assignments in his findings. Tr. 24. Dr. Nunley assigned Miller a GAF score of 40 throughout treatment, with the exception of November 21, 2008, when he assigned a GAF score of 42. Tr. 726, 778, 781, 811. The ALJ did not note Dr. Nunley's GAF score assignments in his findings.

The GAF scale is used by clinicians to rate the psychological, social, and occupational functioning of a patient. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 598 n.1 (9th Cir. 1999). "The GAF scale is a tool for 'reporting the clinician's judgment of the individual's overall level of functioning;'" accordingly, a GAF score reflects a snapshot of a claimant's presentation on the day of the examination. *Chapman v. Astrue*, 2009 WL 3046025, *4 n.1 (D. Or. June 30) (quoting American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental

---

[6] On May 30, 2008, Therapist Lee Monahan assigned Miller a GAF of 60. Tr. 635. Dr. Godard reviewed this report on June 2, 2008 and concluded that continued services were medically necessary. *Id.*

Disorders 32 (4th ed. 2000)) *adopted as modified by* 2009 WL 3046024 (D. Or. Sept. 22, 2009).

Further, contrary to Miller's assertion, a "GAF score does not determine disability." *Gardner v. Astrue*, 2009 WL 1505303, *10 (D. Or. May 27, 2009). Rather, the "GAF assessment is [but] one element of [a doctor's] conclusion. *Id.* at 11. Thus, Miller's GAF scores alone are inadequate to establish disability; the issue instead is whether substantial evidence supports the weight the ALJ afforded to the records and opinion of Dr. Godard and Dr. Nunley. *See Alsup v. Astrue*, 2012 WL 3817795, *4 (D. Or. Sept. 4, 2012).

**B.    Dr. Godard**

**i.    Treatment Records**

Dr. Godard conducted an initial assessment of Miller on November 15, 2007. Tr. 636–41. Dr. Godard diagnosed Miller with anxiety disorder, posttraumatic stress disorder recurrent chronic, alcohol dependence in early remission, history of methamphetamine dependence, major depression and physical and sexual abuse as a child. Tr. 640. As the ALJ noted, Dr. Godard assigned Miller a GAF score of 40, indicating major impairment in several areas such as work or school, family relations, judgment, thinking or mood. Tr. 24 (citing Tr. 640.)

During the course of visits, Dr. Godard noted Miller showed up casually dressed and appropriately groomed; had good eye contact; speech was of normal rate, rhythm, and latency; thoughts were clear and goal directed; no evidence of psychotic thought process or content. *See* Tr. 628–89. His mood and anxiety level varied each visit. Dr. Godard found Miller's anxiety level was highest on days where he had legal issues or court appearances. Tr. 642, 655, 657, 659, 661, 664, 673. During other visits however, Dr. Godard noted improvements, especially with changes in medication and individual counseling sessions with Ms. Tabitha Bird-Weaver. Tr. 644, 646, 666, 653, 671, 674.

The ALJ cited Dr. Godard's treatment records including her diagnoses, prescriptions, and observations of Miller. Tr. 24. However, much of Dr. Godard's treatment notes document her visual observations of Miller and his subjective complaints. A treating physician's opinion may be rejected if based on an uncredible claimant's subjective reports. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Fair*, 885 F.2d at 605. As discussed above, there is substantial evidence in the record supporting the ALJ's rejection of Miller's credibility. Further, Dr. Godard's notations and findings in her treatment records are inconsistent with the conclusion in her September 9, 2008 medical opinion. *See* Tr. 736–40. An ALJ may properly discount a physician opinion based upon discrepancies between the opinion and the physician's treatment notes. *Bayliss*, 427 F.3d at 1216. As discussed below, one of the reasons the ALJ rejected Dr. Godard's medical opinion was he found it inconsistent with her treatment records.

    ii.    **Medical Opinion**

Miller also argues the ALJ improperly rejected Dr. Godard's medical opinion. Pl.'s Opening Br. 3–5. On September 9, 2008, Dr. Godard prepared an opinion in support of Miller's application for disability. Tr. 736–40. Dr. Godard explained Miller's personal history, medical diagnoses, current medications, and time at Yamhill County Adult Mental Health. Tr. 736–37. Dr. Godard stated Miller attends his appointments and is consistent with medications. Tr. 736.

For functional limitations, Dr. Godard stated Miller has never had any significant gainful employment, his psychiatric condition is severe and he is unable to support himself, and he will continue to be unemployable and disabled for at least a year. Tr. 737. While Miller is able to take care of his personal hygiene needs, Dr. Godard stated he is unable to do the activities required to maintain a household including shop for groceries, drive, talk on the phone, childcare, and household chores. *Id.* Dr. Godard also opined Miller cannot be employed in a

normal work environment; he is very sensitive to interpersonal stress, even that which would be considered minimal to normal; he has difficulty concentrating; his anxiety causes him extreme difficulty in interacting with people; he does not have the ability to manage the pressure of getting things done in an efficient and timely manner; his depression interferes with his energy and motivation; and when highly anxious he becomes explosive and potentially dangerous to others around him. *Id.* In sum, Dr. Godard stated due to his severe disability secondary to his psychiatric illness, he is unable to be employed for at least a year. *Id.*

The ALJ considered Dr. Godard's opinion and found it expressed a conclusion of the ultimate issue of disability that is reserved for the Commissioner. Tr. 26. However, the ALJ considered the remainder of the opinion and found it outdated given the opinion was limited to a period of one year.[7] *Id.* Additionally, the ALJ found the opinion was unsupported by evidence of Miller's current functioning and was also inconsistent with Dr. Godard's own treatment notes from 2007 to 2008, which reveal improvement in Miller's functioning. *Id.* As a result, the ALJ gave Dr. Godard's opinion little weight. *Id.*

Miller first argues the ALJ erred because he made no effort to recontact Dr. Godard in regard to the portion of her opinion pertaining to the ultimate issue of disability reserved for the Commissioner. Pl.'s Opening Br. at 4. Social Security Ruling 96–5p states "[f]or treating sources, the rules also require that [the Commissioner] make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." SSR 96–5p, 1996 WL 374183, *2. In this case however, Dr. Godard explained the bases for her opinion that Miller could not work. An ALJ is required to recontact a doctor only if the doctor's report is

---

[7] In support of affirming the ALJ's decision, the Commissioner does not rely on the ALJ's finding that Dr. Godard's opinion was limited to one year. Def.'s Br. at 11, n.2.

ambiguous or insufficient for the ALJ to make a disability determination. *Bayliss*, 427 F.3d at 1217 (citations omitted). Here, the ALJ found the evidence adequate to make a determination regarding Miller's disability. As such, there was no reason for the ALJ to recontact Dr. Godard.

Miller next argues the ALJ erred because he failed to consider the six factors in 20 C.F.R. § 404.1527 for evaluating a treating physician's medical opinion. Pl.'s Opening Br. at 4. Under 20 C.F.R. § 404.1527(c)(2)–(6) several factors determine the weight the ALJ should give to a physician opinion, including: the length of the treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c)(2)–(6); *see also* 20 C.F.R. § 416.927(c)(2)–(6); *Orn v. Astrue*, 495 F.3d 625, 631–32 (9th Cir. 2007). The Commissioner argues the ALJ weighed these factors and rejected Dr. Godard's opinion because of two of the factors: supportability and consistency. Def.'s Br. 10–11.

An ALJ need not accept the opinion of a doctor if that opinion is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citation omitted). Further, an ALJ may properly discount a physician opinion based upon discrepancies between the opinion and the physician's treatment notes. *Id.* Here, Dr. Godard's two page opinion is very conclusory. *See* Tr. 736–37. Dr. Godard explains Miller's personal and medical history in detail, and then concludes he will be unemployable and disabled for at least a year. Dr. Godard explains Miller cannot be employed in a normal work environment because of his limitations, however nothing in Dr. Godard's treatment records supports this.

Most of Dr. Godard's records leading up to this September 9, 2008 opinion indicate Miller's anxiety is highest on days where he had legal issues or court appearances. On May 13, 2008, Dr. Godard noted Miller did not have any major court issues and "seems less anxious

overall." Tr. 653. She also noted Miller "does have some difficultly knowing how to spend his time during the day." *Id.* On June 10, 2008, Dr. Godard noted Miller was having some anxiety issues after moving to Keizer and adjusting to the new neighborhood, but he "does not seems particularly anxious today." Tr. 649. His anxiety levels increased however during his visit on July 31, 2008. Tr. 644–45. On August 15, 2008, Dr. Godard found Miller "has been more anxiety [sic] recently because he is very nervous about his upcoming court date on August 26. He has a difficult time when he is involved in any legal issues." Tr. 642–43.

Much of Dr. Godard's opinion is also inconsistent with her treatment notes. Dr. Godard's opinion stated Miller "attends his appointments and is consistent with taking his medications." Tr. 736. However, the record shows Miller cancelled or failed to attend at least nine sessions with Dr. Godard, Ms. Lee Monahan, and Ms. Tabatha Bird-Weaver at Yamhill County Adult Mental Health. Tr. 648, 651, 663, 675, 684–85, 691, 777, 785. Further, Dr. Godard's opinion does not note any of the improvements she observed leading up to issuance of the opinion. As a result, the ALJ did not err in assigning Dr. Godard's opinion little weight. *Bayliss*, 427 F.3d at 1216.

### C.    Dr. Nunley

Miller's care at Yamhill County Adult Mental Health was transferred from Dr. Godard to Dr. Nunley on September 17, 2008. Tr. 778–80. During his initial assessment, Dr. Nunley diagnosed Miller with anxiety disorder NOS, posttraumatic stress disorder ("PTSD") recurrent chronic, substance abuse disorder, and ADHD. Tr. 778. Dr. Nunley assigned Miller a GAF score of 40. *Id.* In addition to the initial assessment, the record indicates Dr. Nunley also saw Miller again on October 20, 2008 and November 21, 2008.[8] Tr. 781–84, 811–13.

---

[8] On October 23, 2008, Dr. Nunley also approved an annual continued service request/continuum of care plan assigning Miller a GAF score of 40. Tr. 726–28.

During the course of his visits, Dr. Nunley noted Miller showed up neatly dressed; had intermittent eye contact; speech was of normal rate, rhythm, and prosody; mood described as "okay" or "better" and assessed as mildly dysthymic and anxious; and a thought process that's circumferential at times but otherwise goal directed. Tr. 779, 781, 812. Dr. Nunley found Miller had a high anxiety level due to legal issues and court appearances. Tr. 781, 811.

The ALJ's opinion does not state he considered Dr. Nunley's treatment records. However, the record shows that Miller visited Dr. Nunley only three times. Tr. 778–84, 811–13. Dr. Nunley's treatment records provide very similar mental health diagnoses and observations as Dr. Godard's treatment records. The ALJ is not required to discuss every piece of evidence on record, as long as his decision is supported by substantial evidence. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). If any error existed due to the ALJ's failure to discuss Dr. Nunley's treatment records, such error was harmless. *Tommasetti*, 533 F.3d at 1038.

**IV.    Lay Witness Opinion of Valerie Adamich**

Finally, Miller argues the ALJ erred by failing to address the lay witness opinion of his wife Valerie Adamich. Pl.'s Opening Br. at 8. The ALJ must consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide "germane reasons" when rejecting lay testimony. *Id.* The ALJ may reject lay testimony that conflicts with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).

The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Molina*, 674 F.3d at 1114. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Ms. Adamich completed Third Party Function Reports on September 28, 2007 and September 15, 2008, as part of Miller's application for benefits. Tr. 184–91, 221–28. The ALJ's opinion states he reviewed the reports in determining that Miller's activities of daily living were inconsistent with his reports of disabling impairments. Tr. 24. Ms. Adamich attended the ALJ hearing and made herself available to testify, however she was not called as a witness. Tr. 39.

In the Third Party Function Reports, Ms. Adamich stated Miller cannot walk or run without a cane, and cannot do house work or yard work because of pain, nausea, cramping, and unpredictable diarrhea and bowel issues. Tr. 185–87, 189. She also noted Miller's stomach problems require him to be near a bathroom at all times or he will mess himself, and he throws-up frequently. Tr. 185, 222. Ms. Adamich described Miller's emotional state as unstable, and stated he has out-of-control thoughts that keep him awake at night, he is crabby and irritable, and he is not able to handle stress and changes in routine. Tr. 185, 190, 222, 227. Ms. Adamich also noted she helps Miller with personal care needs such as getting in and out of the shower, as well as obtaining and taking his medications. Tr. 185–86, 222–23.

The Commissioner relies on *Molina*, 674 F.3d at 1122, for the principle that an ALJ's failure to discuss lay testimony is harmless when the lay testimony describes the same limitations as the claimant's own testimony, and the ALJ properly rejected the claimant's testimony. Defs.' Br. at 12. At the hearing Miller testified he is unable to work due to the pain in his right knee and his mental issues. Tr. 69–80. Miller also stated he has trouble with manic episodes and being around other people. Tr. 71–74. Miller explained that about once per year he loses

emotional control and is taken to a hospital or jail. Tr. 73–74. As discussed above, the ALJ

found these statements of Miller not credible. Most of Ms. Adamich's statements describe the

same limitations as Miller's own testimony. As such, their omission was harmless error.

*Molina,* 674 F.3d at 1122.

However, Miller did not testify as to any limitations imposed by his stomach problems,

other than stating his manic episodes usually involve an upset stomach. Tr. 73, 81. Miller also

did not testify as to any requirement that he be near a bathroom at all times. However, as

discussed above, the record shows Miller's IBS has been stabilized with prescription medication.

Because Ms. Adamich's testimony conflicts with the objective medical evidence demonstrating

Miller's IBS is stabilized with prescription medication, no reasonable ALJ could have reached a

different disability determination. Therefore, while it was an error for the ALJ not to discuss the

limitations identified by Ms. Adamich, such error was harmless. *Stout,* 454 F.3d at 1056.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision in connection with

Miller's applications for disability insurance benefits and supplemental security income, is

affirmed.

IT IS SO ORDERED.

Dated this 14th day of January, 2014.

Paul Papak
United States Magistrate Judge